**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION**

**BOBBY MINNIS,**

**Plaintiff,**

**vs.** **Case No. 4:17cv168-RH/CAS**

**ALEXIS J. FINK, et al.,**

**Defendants.**
**_____________________________/**

## REPORT AND RECOMMENDATION

The pro se Plaintiff filed a fourth amended civil rights complaint [hereinafter "complaint"], ECF No. 20, against four named Defendants and one "Jane Doe" Defendant. Defendants Adams, Hartopp, and Herndon filed a motion to dismiss[1] on February 20, 2018. ECF No. 40. Plaintiff filed a response in opposition to that motion, ECF No. 42, and the motion is ready for a ruling.

[1] Defendant Fink filed a motion to partially dismiss Plaintiff's complaint, ECF No. 45, but that motion has been denied as moot as Plaintiff voluntarily dismissed his conspiracy claim. ECF Nos. 46, 48. Defendant Fink has now filed an answer. ECF No. 49.

**Allegations of the complaint**

Plaintiff alleged that in the summer of 2015, he was held in confinement at Suwannee Correctional Institution when Defendant Fink told him that he had been authorized to teach Plaintiff a lesson about writing grievances.  ECF No. 20 at 7.  Less than a month later, Plaintiff was moved into a cell with another inmate who Defendant Fink invited to attack Plaintiff, "making it clear that he would look the other way."  *Id.*  The other inmate did not accept the invitation and Plaintiff was released from confinement unharmed, but terrified.  *Id.*  Plaintiff alleged that he wrote dozens of grievances, letters, and appeals seeking protection from Defendants Herndon and "Jane Doe," the Acting Warden.  *Id.*  Those Defendants "remained indifferent and even threatened the Plaintiff with further abuse."  *Id.*

Plaintiff claimed that Defendant Herndon retaliated against him by taking his gain time and threatening him further if he did not stop writing grievances.  *Id.* at 8.  Plaintiff contends that in another act of retaliation, he was moved back into a dormitory under Defendant Fink's supervision and placed in a cell with inmate Roberts.  *Id.*  Defendant Fink told Roberts "to 'handle that,'" pointing to Plaintiff.  *Id.*  Plaintiff alleges that Roberts sexually

assaulted him for an entire week, sometimes with Defendant Fink and others watching and refusing to help.  *Id.*  Plaintiff contends that Defendant Herndon "completely ignored" him due to Defendant Fink's insistence.  *Id.*

Plaintiff was eventually moved to another dorm after calling the rape hotline.  *Id.*  However, Defendant Fink once again put Plaintiff in a cell with another "special" roommate Fink said he had selected for Plaintiff.  *Id.* at 8-9.  Defendant Fink sent a "runaround" to tell the new roommate, inmate Martinez, to attack him.  *Id.* at 9.  Plaintiff alleged that inmate Martinez did so swiftly, attacking him with a blade that had been "slid under the door to him."  *Id.*  When Defendants Fink and Hartopp came by the cell, inmate Martinez refused to continue assaulting Plaintiff "in front of an audience." *Id.*  Defendant Fink told him they were going outside for a smoke break for at least half an hour and then left, turning out all the lights.  *Id.*  Plaintiff contends that he and inmate Martinez fought for control of the weapon and he injured his shoulder in the process.  *Id.*

Plaintiff continued to report the abuse and was once again moved out of Defendant Fink's dorm.  ECF No. 20 at 9.  However, Defendant Hartopp began insisting that another inmate attack him.  *Id.*  Plaintiff contends that the inmate explained that prison officials knew he belonged to a "hate

group" known as "the Unforgivin" and was "required" to "assault and possibly murder" Plaintiff. *Id.* The inmate told Plaintiff he had been given "the green light from the police" and that if he did not "do as expected his own gang would then be obligated to do away with him." *Id.* at 10. That inmate did not do so, however, and Plaintiff alleges he was then "moved from cell to cell with select individuals . . . ordered to attach the plaintiff." *Id.* Plaintiff contends the Defendants refused to take action to protect him, regardless of his repeated requests for help. *Id.*

Plaintiff further contends that at one point, he filed a lawsuit in the "Jacksonville district court." ECF No. 20 at 10. He said that Defendants Hartopp and Fink attempted "to destroy his legal work in order to intimidate him into dropping his suit." *Id.* He also claimed that Defendants Herndon and Jane Doe threatened to do so. *Id.*

Plaintiff alleged that he "wrote many letters to the warden and Secretary of" the Department of Corrections, "but absolutely no one would do anything to protect the Plaintiff." *Id.* Plaintiff further claimed that the Inspector General took no action and Plaintiff was told by Defendant Fink that it "was the Inspector General who was 'covering' for him." *Id.* Plaintiff contends that his many grievances to Jane Doe and his appeals to

Defendant Adams were ineffective.  ECF No. 20 at 11.  Plaintiff contends

that the Defendants failed to respond within 48 hours as required.  *Id.*  He

claims that Defendant Adams "inappropriately responded to and dismissed

all" of his complaints.  *Id.*

Plaintiff claims that the Defendants violated his Eighth Amendment

rights by failing to protect him and by denying him medical care.  *Id.* at 12.

He also alleges that Defendants violated his First Amendment rights by

retaliating against him.  *Id.*  He also alleges a claim under 42 U.S.C.

§ 1985(2) for conspiracy to intimidate.  *Id.* at 12.  As relief, Plaintiff seeks

nominal, compensatory, and punitive damages.  *Id.* at 12-13.

**Standard of Review**

The issue on whether a complaint should be dismissed pursuant to

Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be

granted is whether the plaintiff has alleged enough plausible facts to

support the claim stated.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127

S.Ct. 1955, 167 L.Ed.2d 929 (2007) (retiring the standard from Conley v.

Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  "To survive a

motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to "state a claim to relief that is plausible on its face."

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, 173 L.Ed. 2d 868 (2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955).[2] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 677 (citing Twombly, 550 U.S. at 556); *see also* Speaker v. U.S. Dep't of Health, 623 F.3d 1371, 1380 (11th Cir. 2010). "The plausibility standard" is not the same as a "probability requirement," and "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 677 (quoting Twombly, 550 U.S. at 556). A complaint that "pleads facts that are 'merely consistent with' a defendant's liability," falls "short of the line between possibility and plausibility." Iqbal, 129 556 U.S. at 677 (quoting Twombly, 550 U.S. at 557).

The pleading standard is not heightened, but flexible, in line with Rule 8's command to simply give fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests. Swierkiewicz v. Sorema, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) ("Rule 8(a)'s simplified

---

[2] The complaint's allegations must be accepted as true when ruling on a motion to dismiss, Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992), *cert. denied*, 113 S. Ct. 1586 (1993), and dismissal is not permissible because of "a judge's disbelief of a complaint's factual allegations." Twombly, 127 S.Ct. at 1965, (quoting Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)).

pleading standard applies to all civil actions, with limited exceptions."). Pro se complaints are held to less stringent standards than those drafted by an attorney. Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986) (citing Haines v. Kerner, 404 U.S. 519, 520-521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972)). Nevertheless, a complaint must provide sufficient notice of the claim and the grounds upon which it rests so that a "largely groundless claim" does not proceed through discovery and "take up the time of a number of other people . . . ." Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005) (quoted in Twombly, 550 U.S. at 558). The requirements of Rule 8 do "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 556 U.S. at 678-79, 129 S.Ct. at 1949. A complaint does not need detailed factual allegations to survive a motion to dismiss, but Rule 8 "demands more than an unadorned, the-defendant-unlawfully- harmed-me accusation." 556 U.S. at 678, 129 S.Ct. at 1949. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting Twombly, 550 U.S. at 555). Thus, "conclusory allegations, unwarranted factual deductions or legal

conclusions masquerading as facts will not prevent dismissal." Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1185 (11th Cir. 2003).

**Motion to Dismiss, ECF No. 40**

**1. Fails to State a Claim**

Defendant Adams contends that the complaint should be dismissed against her because it fails to state a claim. ECF No. 40 at 7. She asserts that Plaintiff seeks to hold her liable on the basis of respondeat superior which is not permissible in a civil rights action. *Id.* at 7-10. Defendant Adams contends that Plaintiff did "not allege any direct participation from Defendant Adams, only that Adams gave 'rubber stamp' responses despite [Plaintiff's] sheer number of grievances." *Id.* at 10. Further, Defendant Adams argues that Plaintiff made only conclusory statements that Suwannee C.I. had "a wide history of abuse" and that Defendant Adams was aware of such abuse because of the "sheer volume of complaints" received from Plaintiff and "dozens of other inmates" who were incarcerated at Suwannee C.I.

In response, Plaintiff disputes that he seeks to hold Defendant Adams liable on the basis of respondeat superior, or vicarious liability. ECF No. 42 at 4. He states that he "in no way makes a claim that Adams

was a supervisor over the defendants, nor does he claim vicarious liability." *Id.* Plaintiff contends Defendant "Adams is guilty of committing deliberate indifference by repeatedly ignoring his desperate pleas for help." *Id.* He points out that he repeatedly complained to Defendant Adams of the various issues he faced at Suwannee but said Defendant Adams "remained indifferent" and failed to act to protect him. *Id.* at 4-5. Plaintiff asserts that Defendant Adams received "sufficient notice of a history of widespread abuse that she failed to correct," and that is sufficient to state a claim for violating his Eighth Amendment rights. *Id.* at 5.

The Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison. Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Although the Eighth Amendment does not require comfortable prisons, it does prohibit inhumane ones. *Id.* The Eighth Amendment[3] guarantees that prisoners will not be "deprive[d] ... of the

[3] "In the prison context, three distinct Eighth Amendment claims are available to plaintiff inmates alleging cruel and unusual punishment, each of which requires a different showing to establish a constitutional violation." Thomas v. Bryant, 614 F.3d 1288, 1303-04 (11th Cir. 2010). There are claims concerning the conditions of confinement, claims challenging an unnecessary and excessive use of force, and claims of deliberate indifference. In the deliberate indifference context, there are two varieties of such claims: deliberate indifference to medical needs and deliberate indifference to a

minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981) (quoted in Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004)). "[B]asic human necessities include food, clothing, shelter, sanitation, medical care, and personal safety." Harris v. Thigpen, 941 F.2d 1495, 1511 (11th Cir. 1991) (cited in Collins v. Homestead Corr'l Inst., 452 F.App'x 848, 850-851 (11th Cir. 2011)).

In guaranteeing inmate safety, the Eighth Amendment "imposes a duty on prison officials to provide 'humane conditions of confinement,' and to 'take reasonable measures to guarantee the safety of the inmates.'" Bugge v. Roberts, 430 F. App'x 753, 757 (11th Cir. 2011) (quoting Farmer, 511 U.S. at 832). "[P]rison officials have a duty 'to protect prisoners from violence at the hands of other prisoners.'" Bugge, 430 F. App'x at 757

---

sufficiently serious risk of harm. *See* Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), and Rhodes v. Chapman, 452 U.S. 337, 345, 101 S. Ct. 2392, 2398, 69 L. Ed. 2d 59 (1981). Nevertheless, "[w]hether one characterizes the treatment received by [the prisoner] as inhumane conditions of confinement, failure to attend to his medical needs, or a combination of both, it is appropriate to apply the 'deliberate indifference' standard articulated in Estelle." Wilson v. Seiter, 501 U.S. 294, 303, 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991) (citations omitted). Only an excessive force claim requires showing a heightened mental state - "that the defendants applied force 'maliciously and sadistically for the very purpose of causing harm.'" Thomas, 614 F.3d at 1304 (citing Wilson, 501 U.S. at 302, 111 S.Ct. at 2326 (citing Whitley v. Albers, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986))).

(quoting Farmer, 511 U.S. at 833).  "Being violently assaulted in prison is

simply not part of the penalty that criminal offenders pay for their offenses

against society."  McMillan v. Dep't of Corr., No. 5:13-CV-292-WS-GRJ,

2016 WL 4059230, at *10 (N.D. Fla. July 8, 2016), report and

recommendation adopted, No. 5:13CV292-WS/GRJ, 2016 WL 4059679

(N.D. Fla. July 27, 2016) (quoting Farmer, 511 U.S. at 834, 114 S. Ct. at

1977).  Prison officials cannot use unnecessary and excessive physical

force against a prisoner.  Ergo, they cannot indirectly do so by enlisting

other inmates to assault a fellow prisoner.

It is true that prison officials may not be held liable for the actions of

other persons on the basis of supervisory liability.  Miller v. King, 384 F.3d

1248, 1261 (11th Cir. 2004) (cited in Valdes v. Crosby, 450 F.3d 1231,

1236 (11th Cir. 2006)).  However, a defendant does not have to personally

participate in a alleged constitutional violation to be held liable.  Liability

also exists "when there is a causal connection between the actions of the

supervising official and the alleged constitutional deprivation."  Valdes, 450

F.3d at 1236 (quoting Miller).  A causal connection may be shown when "a

'history of widespread abuse' puts the responsible supervisor on notice of

the need to correct the alleged deprivation, and he or she fails to do so." 450 F.3d at 1237.

Plaintiff's complaint sufficiently alleged that he filed "many appeals" seeking to report unconstitutional abuses to Defendant Adams. Plaintiff alleged that dozens of inmates had reported a "notorious history of abuse." ECF No. 20 at 11. He also said that the sheer volume of his own reports gave Defendant Adams knowledge of that history of abuse and, yet, she failed to correct it. Thus, Plaintiff's complaint did not allege one isolated incident but, instead, dozens of reports. Plaintiff's allegations are plausible on their face and sufficiently state a claim that Defendant Adams was deliberately indifferent to a serious risk of harm. Notably, stating a claim is not the same as supporting a claim. Plaintiff will have to produce evidence in support of his factual allegations to prove his claim against Defendant Adams. Yet at this stage, Plaintiff provided sufficient facts in his complaint to state a claim against Defendant Adams. The motion to dismiss the claim against Defendant Adams, ECF No. 40, should be denied.

**2. Conspiracy**

Defendants also seek dismissal of Plaintiff's conspiracy claim under 42 U.S.C. § 1985. ECF No. 40 at 11. Notably, in responding to Defendant

Fink's motion to dismiss,[4] Plaintiff stated that he was willing to dismiss his § 1985 conspiracy claims. ECF No. 46. However, in doing so, Plaintiff stated that he wanted to retain conspiracy claims under § 1983. *Id.* In his response to the instant motion to dismiss, Plaintiff contends that he has presented facts showing that Defendant Fink's supervisors authorized his actions which reveals a conspiracy. ECF No. 42 at 6. He further alleges that several of the Defendants confirmed the conspiracy themselves. *Id.*

Plaintiff's complaint asserted a conspiracy claim only pursuant to 42 U.S.C. § 1985(2). ECF No. 20 at 12. Plaintiff's statement of voluntarily dismissing this claim should be accepted. Nevertheless, a § 1985(2) conspiracy claim could not proceed because he does not state a "claim for relief under the first portion of section 1985(2), which applies only to conspiracies alleged to have deterred testimony in federal court." McAndrew v. Lockheed Martin Corp., 206 F.3d 1031, 1036 n.2 (11th Cir. 2000) (en banc) (cited in Lumpkin v. Attorney Gen., Fla., 703 F. App'x 715, 717 (11th Cir. 2017)). He also does not state a "claim for relief under the

---

[4] Defendant Fink filed his motion to dismiss, ECF No. 45, on May 2, 2018, after the first motion to dismiss, ECF No. 40, and Plaintiff's response thereto. ECF No. 42. It must be acknowledged that Plaintiff's response to Defendant Fink's motion was filed *after* Plaintiff had responded to the instant motion to dismiss, ECF No. 40, filed by the other Defendants.

second portion of section 1985(2), which" is applicable "only if the conspirators act 'with intent to deny to any citizen the equal protection of the laws,' or to injure a person who seeks to enforce 'equal protection of the laws.'" Lumpkin, 703 F. App'x at 717 (citations omitted). Plaintiff does not provide facts which would support an equal protection claim or a discriminatory animus and, thus, he does not state a viable conspiracy claim for relief under 42 U.S.C. § 1985.

Accepting Plaintiff's clarification that he wants to nevertheless pursue a conspiracy claim under § 1983, it is first noted that he did not clearly assert such a claim in his complaint. Second, even if Plaintiff had alleged such a claim, it could not proceed against these Defendants.

"[T]he intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy." McAndrew v. Lockheed Martin Corp., 206 F.3d 1031, 1036 (11th Cir. 2000) (en banc) (quoted in Grider v. City of Auburn, 618 F.3d 1240, 1261 (11th Cir. 2010)). The doctrine provides that a "corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." McAndrew, 206 F.3d at

1036 (quoted in Grider, 618 F.3d at 1261).  This doctrine has been

extended beyond the world of corporations, and applies to public entities as

well.  Denney v. City of Albany, 247 F.3d 1172, 1190-91 (11th Cir. 2001)

(holding that where the "only two conspirators identified" were city

employees, the intracorporate conspiracy doctrine barred plaintiffs' § 1985

conspiracy claims) (citing Dickerson v. Alachua Cnty. Comm'n, 200 F.3d

761, 768 (11th Cir. 2000)); *see also* Rehberg v. Paulk, 611 F.3d 828, 854

(11th Cir. 2010) (stating that "intracorporate conspiracy doctrine bars

conspiracy claims against corporate or government actors accused of

conspiring together within an organization").  It has been specifically

applied to claims alleging that "employees of the FDOC" conspired to

violate an inmate's constitutional rights "in retaliation for his filing

grievances . . . ."  Claudio v. Crews, No. 5:13cv345-MP/EMT, 2014 WL

1758106, at *6 (N.D. Fla. May 1, 2014) (dismissing conspiracy claim

brought in § 1983 action); *see also* Briggs v. Hancock, No.

3:13-CV-212-J-39MCR, 2014 WL 5378527, at *9 (M.D. Fla. Oct. 21, 2014)

(same).

     Here, there are no claims of involvement by persons not employed

within the Florida Department of Corrections.  Because all named

Defendants are employees of the Department, the conspiracy claim must fail as a matter of law. Moreover, a free-standing conspiracy claim adds nothing to the remaining constitutional claims. Accordingly, Plaintiff's notice of voluntary dismissal of his § 1985 conspiracy claim is accepted, but his § 1983 conspiracy claim should be dismissed as barred by the intercorporate conspiracy doctrine.[5]

### 3.    Exhaustion

Defendants also argue that portions of Plaintiff's complaint should be dismissed because he did not properly exhaust his administrative remedies concerning some of his claims against Defendant Herndon, and one claim against Defendant Hartopp.[6]  ECF No. 40 at 6-7.  Specifically, it is argued that Plaintiff did not grieve his claim of retaliation, or his claim that Herndon put Plaintiff in a cell with a dangerous inmate to retaliate against him, and

---

[5] Defendants did not raise this as a basis to dismiss the complaint, likely because Plaintiff did not clearly assert a § 1983 conspiracy claim until after Defendant Fink filed the second motion to dismiss.  Nevertheless, this Report and Recommendation gives Plaintiff notice of the Court's intent to *sua sponte* dismiss this claim.  The objection period provides Plaintiff with an opportunity to respond.  Russell v. Redstone Fed. Credit Union, 610 F. App'x 807, 809 (11th Cir. 2015) (dismissal must follow "proper procedure" of giving notice and an opportunity to respond).

[6] Defendants contend that Plaintiff filed only two grievance appeals concerning allegations against Defendant Herndon - log numbers 15-6-46144 and 16-6-00372. *See* ECF No. 40-1.

that he ignored Plaintiff's reports of sexual abuse. *Id.* It is also argued that

Plaintiff never grieved his claim that Defendants Hartopp and Herndon

threatened or attempted to destroy Plaintiff's legal work. *Id.* at 7.

The issue of whether a prisoner failed "to properly exhaust available

administrative remedies under the PLRA should be treated as a matter in

abatement." Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008) (cited in

Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)). The exhaustion

"defense is treated 'like a defense for lack of jurisdiction,' although it is not

a jurisdictional matter." Bryant, 530 F.3d at 1374 (cited in Turner, 541 F.3d

at 1082).

Ruling on a "motion to dismiss for failure to exhaust administrative

remedies is a two-step process." Turner, 541 F.3d at 1082 (citation

omitted). "First, the court looks to the factual allegations in the defendant's

motion to dismiss and those in the plaintiff's response, and if they conflict,

takes the plaintiff's version of the facts as true." *Id.* "If, in that light, the

defendant is entitled to have the complaint dismissed for failure to exhaust

administrative remedies, it must be dismissed." *Id.* (citing to Bryant, 530

F.3d at 1373-74). "If the complaint is not subject to dismissal at the first

step, where the plaintiff's allegations are assumed to be true, the court then

proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082 (citing Bryant, 530 F.3d at 1373–74, 1376).[7] The burden of proof for evaluating an exhaustion defense rests with the defendant. Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 921, 166 L.Ed.2d 798 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); Turner, 541 F.3d at 1082-83.

In general, prisoners within the Florida Department of Corrections must exhaust a three-step grievance procedure. Rule 33-103 requires prisoners to file an informal grievance, then formal grievance, followed by a grievance appeal. However, emergency grievances, or grievances of reprisal, medical and banking issues, and grievances concerning gain time may be filed "directing with the reviewing authority . . . by-passing the informal grievance step . . . ." FLA. ADMIN. CODE R. 33-103.006(3).

[7] "Where exhaustion . . . is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376.

Defendant submitted copies of some of Plaintiff's grievances with the motion. ECF No. 40-1. In his informal grievance dated November 15, 2015, Plaintiff alleged that after he grieved to classification about the lost of gain time, he received reduced gain time of only 6 days. ECF No. 40-1 at 7. The grievance was then "approved" by Defendant Herndon. *Id.* Plaintiff then filed a formal grievance to the warden complaining that his grievance of reprisal had improperly been sent to the person about whom he was grieving. *Id.* at 6. That grievance was denied on December 14, 2015, and advised that Plaintiff "did not indicate any reprisal issue with Mr. Herndon," and only "complained about the number of days of gain time awarded." *Id.* at 5. Nevertheless, the grievance response stated that his new allegation of reprisal had "been noted and forwarded for further consideration." *Id.* Plaintiff then filed an appeal to the Secretary, explaining he had been trying to avoid further reprisal, but now that he had "come out and grieved" Defendant Herndon's retaliation by not awarding the full amount of gain time, Plaintiff complained that he increased his retaliation by not awarding any gain time. *Id.* at 4. The appeal was denied on January 13, 2016. *Id.* at 3.

Plaintiff did not use the term "retaliation" in the informal grievance, but it is obvious from the context that he believes he suffered an adverse consequence after he "grieved classification."  His follow-up formal grievance and appeal clearly grieved retaliation.  Those grievances were denied on the merits and not rejected.  Plaintiff exhausted administrative remedies concerning his claim of retaliation by Defendant Herndon.

Defendants also submitted another formal grievance in which Plaintiff complained that Defendant Herndon put him at risk of attack by coming to his cell and asking loud enough for the entire dormitory to hear whether Plaintiff had any "gender confusion issues" or was a homosexual.  ECF No. 40-1 at 11.  Plaintiff complained that an "extremely violent" inmate who was known for "torturing" sex-offenders and homosexuals had been placed in his cell.  *Id.*  Plaintiff said he had been grieving that officers were trying to have him raped or otherwise harmed and that Defendant Herndon was "fully aware of this" yet he displayed a "reckless indifference" to his plight. *Id.*  Plaintiff said that he had grieved to Defendant Herndon that he needed to be reclassified to protect him since he had already been targeted and sexually assaulted, but Defendant Herndon ignored him.  *Id.*  The response stated that his grievance was denied, although his allegations of staff

misconduct were forwarded to the Inspector General's office for further review." *Id.* at 10.  Plaintiff filed an appeal to the Secretary's Office, *id.* at 9, and his appeal was denied.  *Id.* at 8.  Thus, Defendants' exhibits have shown that Plaintiff exhausted administrative remedies concerning his claims that Defendant Herndon did not protect him, was deliberately indifferent to Plaintiff's requests for help, and that violent inmates were put in his cell to attack and rape him.

What remains are Plaintiff's two additional claims against Defendant Herndon for fabricating a disciplinary report to keep Plaintiff indefinitely at Suwannee, ECF No. 20 at 8, and for threatening him in an effort to have Plaintiff drop his lawsuit.  *Id.* at 10.  Plaintiff also claimed that Defendant Hartopp destroyed (or attempted) to destroy his legal work pertaining to the case filed in the "Jacksonville district court" in an "attempt to intimidate" Plaintiff into dropping his case.  *Id.*  Defendants contend that these claims are unexhausted and that the claim against Hartopp could not be exhausted as it would be "a temporal impossibility that" Plaintiff could exhaust a claim "made in response to him filing this case."  ECF No. 40 at 7.

Taking the last argument first, Plaintiff alleged that he "filed his original lawsuit in Jacksonville district court, and both [Defendants] Hartopp and Fink attempted "to destroy his legal work in order to intimidate him into dropping his suit." The Jacksonville case, which Plaintiff identified in his complaint under "previous lawsuits" was filed in October 2015, case number 3:15cv01200,[8] against defendants Hartopp, Fink, and others. ECF No. 20 at 4. It was not this case. This case was filed on April 5, 2017. Defendants argument that it was a temporal impossibility for Plaintiff to exhaust that claim should be rejected. It should also be rejected because Plaintiff has submitted a copy of an "emergency grievance" (grievance log # 1510-230-011) which raised that issue and his grievance was approved. ECF No. 42 at 20-21.

Plaintiff has responded to Defendants' motion by submitting numerous exhibits in an effort to demonstrate exhaustion of his claims. ECF No. 42. Those exhibits have been reviewed, but none raise the issue that Defendant Herndon threatened him to drop the lawsuit filed in the Middle District, and none alleged that Defendant Herndon fabricated a disciplinary report to keep him at Suwannee C.I. indefinitely. *Id.* The

[8] Judicial notice is taken that his Middle District of Florida case is still pending.

grievances raise such a claim against Captain Perry who allegedly directed Sergeant Edwards to write Plaintiff a “phony D.R.” in retaliation for writing grievances, but no grievance was found that raised such a claim against Defendant Herndon. *See* ECF No. 42 at 11, 14 (Exhibits B-5, B-8). Plaintiff alleged that the “phony D.R.” was “written so as to keep [him] on C.M. [close management] indefinitely so that they can abuse [him] and get their revenge.” ECF No. 42 at 16 (Ex. B-10). Because those grievances do not demonstrate exhaustion of this claim against Defendant Herndon, the motion to dismiss should be granted in part only as to the two allegations that Defendant Herndon fabricated a disciplinary report[9] and threatened Plaintiff in an effort to have him drop his lawsuit. *Id.* at 10.

---

[9] As a matter of clarification for Plaintiff, he is advised that in Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008), the court held that a viable retaliation claim must show: (1) constitutionally protected speech, (2) suffering an adverse action, and (3) a causal relationship between the retaliatory action and the protected speech. However, an “inmate cannot state a claim of retaliation for a disciplinary charge involving a prison rule infraction when the inmate was found guilty of the actual behavior underlying that charge after being afforded adequate due process.” O'Bryant v. Finch, 637 F.3d 1207, 1215 (11th Cir. 2011). That is so because the causal connection between the Plaintiff's protected activity and the adverse action is severed. Thus, assuming that Plaintiff was found guilty of the allegedly “phony D.R.,” he is advised that such a claim could not proceed even if it were exhausted.

**RECOMMENDATION**

It is respectfully **RECOMMENDED** that the motion to dismiss, ECF No. 40, be **GRANTED in part** as to Plaintiff's conspiracy claims and his claims against Defendant Herndon for fabricating a disciplinary report and for threatening him in an effort to intimidate Plaintiff into dropping a lawsuit, but the motion should otherwise be **DENIED**.  It is also **RECOMMENDED** that this case be **REMANDED** for further proceedings, and that Defendants Adams, Herndon, and Hartopp be required to file an answer to Plaintiff's fourth amended complaint, ECF No. 20, within fourteen days of the date an Order is entered adopting this Report and Recommendation.

**IN CHAMBERS** at Tallahassee, Florida, on June 8, 2018.


 S/    Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**